## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **DOBBIN PLANTERSVILLE WATER** | § | |
| **SUPPLY CORPORATION,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **CIVIL NO. 1:21-CV-00612-RP** |
| | § | |
| **PETER LAKE, WILL MCADAMS, and** | § | |
| **LORI COBOS, in their official** | § | |
| **capacities as Commissioners of the** | § | |
| **Public Utility Commission of Texas,** | § | |
| **THOMAS GLEESON, in his official** | § | |
| **capacity as Executive Director of the** | § | |
| **Public Utility Commission of Texas,** | § | |
| **SIG MAGNOLIA LP, and** | § | |
| **REDBIRD DEVELOPMENT, LLC,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:   THE HONORABLE ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant Public Utility Commission of Texas Officials' Motion to Dismiss, filed September 2, 2021 (Dkt. 20); Defendant SIG Magnolia LP's Motion to Dismiss, filed September 3, 2021 (Dkt. 23); Defendant Redbird Development, LLC's Motion to Dismiss, filed September 3, 2021 (Dkt. 24); and the associated response and reply briefs. On April 22, 2022, the District Court referred the motions to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas.

### I.    Background

Plaintiff Dobbin Plantersville Water Supply Corporation ("Dobbin") is a water supply company that provides water service to two counties in Texas. Dkt. 1 (Plaintiff's Original

Complaint) ¶ 3. Dobbin is indebted on two loans made by the United States Department of Agriculture ("USDA"), which qualifies it as a federally indebted water association pursuant to 7 U.S.C. § 1926(b). *Id.* ¶ 3. Dobbin asserts that it has the exclusive right to provide water service within its federally recognized service area. *Id.* Dobbin provides water service under a certificate of public convenience and necessity ("CCN"), which is issued and regulated by the Public Utility Commission of Texas ("PUC"). *Id.* ¶ 10.

Defendants SIG Magnolia ("SIG") and Redbird Development, LLC ("Redbird") own property on which they intend to build residential developments. Dkt. 23 at 2; Dkt. 24 at 2. SIG and Redbird allege that they discussed with Dobbin provision of water services to their properties and discovered that Dobbin could not meet their water supply needs within a reasonable amount of time. *Id.* In April and May 2021, SIG and Redbird, respectively, filed Petitions with the PUC to decertify a part of Dobbin's service area so that their developments could obtain water service from another source. Dkt. 23 at 1, 6; Dkt. 24 at 1, 6.

SIG and Redbird filed their Petitions pursuant to Texas Water Code § 13.2541, which provides that a property owner whose land is "not receiving water or sewer service may petition for expedited release of the area from a certificate of public convenience and necessity." *Id.* Part of the property SIG and Redbird seek to release is within Dobbin's CCN No. 11052.[1] Dobbin does not dispute that it is not currently providing water service to SIG and Redbird, but asserts that it has the physical ability to do so. Dkt. 1 ¶ 17.

Dobbin filed motions to intervene in both PUC proceedings, which were granted, and then moved to dismiss the Petitions. Dkt. 20 at 7. In August 2021, the PUC Administrative Law Judge ("ALJ") issued a proposed order on Redbird's Petition recommending that the release be granted;

---

[1] Dobbin states that "all land SIG seeks to decertify is situated within Dobbin's CCN 11052," and that Redbird seeks to decertify a part of Dobbin's CCN 11052. Dkt. 1 ¶¶ 10-11.

Redbird's Petition remains pending before the PUC. *Id.* In July 2021, PUC staff recommended to the ALJ that SIG's Petition be granted. Dkt. 23 at 5; Dkt. 23-1 at 117. SIG's proceeding also remains pending. *Id.*

On July 9, 2021, Dobbin filed this suit against Peter Lake, Will McAdams, Lori Cobos, Thomas Gleeson (collectively, the "PUC Defendants"),[2] SIG, and Redbird. Dkt. 1. Dobbin asserts claims under 42 U.S.C. § 1983 "and at Equity" that it has a federal statutory right under 7 U.S.C. § 1926(b) "to be protected from any curtailment or limitation of its right to sell water within Dobbin's territory." *Id.* ¶ 23. Dobbin also seeks a declaratory judgment that § 1926(b) prohibits decertification of any part of its CCN, and that Texas Water Code § 13.2541(d)[3] is unconstitutional. *Id.* ¶ 31. Dobbin asks the Court to permanently enjoin Defendants SIG and Redbird "from the further presentation or prosecution of the pending Decertification Petitions." *Id.* at 16. Dobbin also seeks a "permanent prospective injunction against Defendant Commissioners and Defendant Gleeson from any further consideration, or granting relief under the Decertification Petitions." *Id.* at 17. Dobbin requests damages, attorney fees, and costs against Defendants SIG and Redbird only. *Id.*

## II.    Legal Standards

In determining the motions to dismiss, the Court applies the following legal standards.

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. A federal court properly dismisses a case for lack of subject matter

---

[2] Defendants Thomas Gleeson is the executive director of the PUC, and Defendants Peter Lake, Will McAdams, and Lori Cobos are PUC Commissioners. Dkt. 1 ¶¶ 4-5. The PUC Defendants are sued in their official capacities. *Id.*

[3] Effective September 1, 2019, TEX. WATER CODE § 13.254(a-6) was re-designated as § 13.2541(c)-(d), (f). *See* Act of May 25, 2019, 86th Leg. R.S., ch. 688, § 4, 2019 Tex. Sess. Law Serv. ch. 688 (West).

jurisdiction "when [it] lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). The party asserting jurisdiction has the burden of proof on a Rule 12(b)(1) motion to dismiss, and the motion "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In deciding a Rule 12(b)(1) motion, the court may consider (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Stratta v. Roe*, 961 F.3d 340 (5th Cir. 2020).

## B.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "'to state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is generally limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

### III.    Analysis

The Court addresses the motions to dismiss in turn.

### A.  The PUC Defendants' Motion to Dismiss

### 1.   Proper Parties under Section 1983

The PUC Defendants argue that Dobbin's claims under § 1983 should be dismissed because they and Dobbin are not proper parties. Dkt. 20 at 3. They contend that Dobbin is not a proper plaintiff under § 1983 because it is the "functional equivalent of a political subdivision," and the PUC is not a proper defendant because, as a state entity, it is not a person within the meaning of § 1983. *Id.* at 9. Dobbin responds that it is not a political subdivision, but even if it were, precedent barring § 1983 claims against state entities does not apply because Dobbin seeks relief based on a statutory, not a constitutional, right. Dobbin further asserts that the PUC Defendants are considered "person[s]" under § 1983 because Dobbin seeks prospective injunctive relief. 42 U.S.C. § 1983.

The Fifth Circuit Court of Appeals, sitting *en banc*, directly addressed this issue in *Green Valley Special Util. Dist. v. City of Schertz, Tex.*, 969 F.3d 460 (5th Cir. 2020) (en banc). In *Green Valley*, the court stated that it held in *City of Safety Harbor v. Birchfield*, 529 F.2d 1251, 1253 (5th Cir. 1976), that "municipalities and political subdivisions are not proper parties under § 1983." *Id.* at 474. The court applied its holding in *Birchfield* to PUC officials, stating that "the PUC Officials are not proper § 1983 defendants either." *Id.* at 475.

Applying *Green Valley*, the Court finds that the PUC Defendants are not proper § 1983 defendants and recommends that Dobbin's § 1983 claims against them be dismissed.[4]

### 2. Claim at Equity

The Fifth Circuit held in *Green Valley* that "*Birchfield* stands as no obstacle to having this case proceed against the PUC Officials" when there is "a cause of action against [defendants] *at equity*, regardless of whether [plaintiff] can invoke § 1983." 969 F.3d at 475. To maintain its claim at equity, Dobbin must meet the requirements of *Ex parte Young*, 209 U.S. 123 (1908). For the *Ex parte Young* exception to sovereign immunity to apply, "three criteria must be satisfied: (1) a plaintiff must name individual state officials as defendants in their official capacities; (2) the plaintiff must allege an ongoing violation of federal law; and (3) the relief sought must be properly characterized as prospective." *Green Valley*, 969 F.3d at 471 (cleaned up). The *Young* inquiry "does not require an analysis of the merits of the claim." *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019) (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 646 (2002)).

Dobbin meets the first *Ex parte Young* element because it is suing the PUC Defendants in their official capacities as commissioners of the PUC, which is a state agency. *See Green Valley*, 969 F.3d at 472-73 (holding that the *Ex parte Young* exception applied to PUC officials).

Dobbin also satisfies the second element because it alleges an ongoing violation of federal law. Specifically, Dobbin seeks a declaratory judgment that § 1983 preempts Texas Water Code § 13.2541(d), as well as an injunction prohibiting the PUC from taking further action on the Petitions that rely on § 13.2541(d). Numerous suits for equitable relief based on federal preemption have proceeded under *Ex parte Young. See, e.g.*, *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017) (applying *Young* exception in action seeking

---

[4] Dobbin's argument that *Birchfield* concerns a violation of a constitutional right, not a statutory right, is unpersuasive. The same statutory right was before the court in *Green Valley*.

injunctive relief against state officers based on federal preemption); *Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 403 F.3d 324, 335 (5th Cir. 2005) (recognizing implied right of action to assert preemption claims seeking injunctive and declaratory relief). In addition, a § 1983 suit based on preemption of § 13.2541(d) by § 1926(b) has proceeded under the *Young* exception. *Rockett Special Util. Dist. v. McAdams*, No. A-20-CV-1207-RP, 2021 WL 8081920, at *4 (W.D. Tex. July 30, 2021), *R&R adopted sub nom. Rockett Special Util. Dist. v. Botkin*, No. 1:20-CV-1207-RP, 2021 WL 8082384 (W.D. Tex. Sept. 30, 2021).

To satisfy the final *Young* requirement, Dobbin must seek prospective relief. In other words, "a complaint must allege that the defendant is violating federal law, not simply that the defendant has done so." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) (citing *Green v. Mansour*, 474 U.S. 64, 71-73 (1985)). In *Green Valley*, the Fifth Circuit held that the plaintiff satisfied *Young*'s requirements because it "requests relief prospectively requiring the PUC Officials to refrain from taking future actions to enforce an unlawful order." 969 F.3d at 472.

Here, Dobbin seeks to permanently enjoin the PUC Defendants from (1) any further consideration or granting relief under the Petitions, and (2) enforcement or other implementing action in furtherance of decertification. Thus, Dobbin requests only prospective relief against the PUC Defendants. *See id.*, 969 F.3d at 471-73; *Rockett*, 2021 WL 8081920, at *4. Unlike the Plaintiff in *Green Valley*, 969 F.3d at 473, Dobbin does not seek retrospective relief by asking the Court to invalidate any PUC orders. Accordingly, the undersigned Magistrate Judge concludes that Dobbin's claim at equity falls within the *Ex parte Young* exception and recommends that the District Court deny the PUC Defendants' motion to dismiss as to this claim.

### 3.  Claim for Protection under Section 1926(b)

Finally, the PUC Defendants argue that § 1926(b) applies only to local governments, not to

state regulators like them.[5] The PUC Defendants further argue that to read the statute to prohibit a

state regulator from releasing property would represent a "commandeering of the state regulatory

process." Dkt. 20 at 3. In response, Dobbin argues that § 1926(b) is not limited to municipal

corporations, but rather applies to any "other public body." 7 U.S.C. § 1926(b). Dobbin further

argues that its asserted interpretation of the statute would not constitute commandeering because

§ 1926(b) was enacted pursuant to Congress's spending power and Texas voluntarily opted into

the program.

Section 1926(b) states:

> The service provided or made available through any such
> association shall not be curtailed or limited by inclusion of the area
> served by such association within the boundaries of any municipal
> corporation or other public body, or by the granting of any private
> franchise for similar service within such area during the term of such
> loan; nor shall the happening of any such event be the basis of
> requiring such association to secure any franchise, license, or permit
> as a condition to continuing to serve the area served by the
> association at the time of the occurrence of such event.

7 U.S.C. § 1926 (West 2018). A water association seeking the protections of § 1926 must establish

that (1) it is an association as defined in § 1926, (2) the association has an outstanding qualifying

federal loan, and (3) the utility provided or made water service available. *Id.*

The Court finds that § 1926(b) applies to the PUC. First, the plain language of § 1926(b) does

not limit its application to municipalities because it refers to "any municipal corporation or other

---

[5] In support of their argument, the PUC Defendants rely on *City of Madison v. Bear Creek Water Ass'n, Inc.*, 816 F.2d 1057 (5th Cir. 1987). *City of Madison* does not hold that § 1926(b) applies only to municipalities. The Fifth Circuit described § 1926(b) as a "congressional mandate that *local governments* not encroach upon the services provided by such associations," but did not address to what type of entities § 1926(b) applies. *Id.* at 1059 (emphasis added). Accordingly, the PUC's reliance on *City of Madison* is misplaced.

public body," without defining those terms. The Code of Federal Regulations uses broader language, stating that § 1926(b) "was enacted to protect the service area . . . from loss of users due to actions or activities of *other entities* in the service area." 7 C.F.R. § 1782.14 (emphasis added). The regulation "has been interpreted liberally by federal courts to protect an indebted rural water association from municipal encroachment." *El Oso Water Supply Corp. v. City of Karnes City, Tex.*, No. SA-10-CA-0819-OLG, 2011 WL 9155609, at *5 (W.D. Tex. Aug. 30, 2011), *R. & R. adopted*, 2012 WL 4483877 (W.D. Tex. Mar. 19, 2012); *see also City of Madison*, 816 F.2d at 1059 (stating that § 1926(b) creates an "absolute prohibition" against curtailment or limitation and interpreting § 1926(b) to avoid creating a "loophole" allowing a city to encroach on protected property).

Courts have rejected the PUC Defendants' narrow interpretation of § 1926(b). In *Crystal Clear Special Util. Dist. v. Marquez*, 316 F. Supp. 3d 965, 973-74 (W.D. Tex. 2018), this Court disagreed with the PUC officials' argument that the "statute does not apply to a case in which a *landowner* asks to be removed from a [CCN]," as follows:

> Many courts have found that "it is not necessary that the municipality actually annex or attempt to physically include the disputed territory in order for curtailment to be found." Rather, "[t]here is . . . preemption of any local or state law that purports to take away from an indebted rural water association any territory for which the association is entitled to invoke the protection of § 1926(b)." Thus, the fact that a municipality has not yet moved to incorporate the Disputed Property into its territory does not preclude application of Section 1926. The protections of Section 1926(b) apply to prohibit decertification of the Disputed Property under Section 13.254(a–5) when, as is the case with Crystal Clear, the rural water association is federally indebted and providing or making service available. (internal citations omitted).

*See also Pittsburg Cnty. Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 716 (10th Cir. 2004) ("There is . . . preemption of any local or state law that purports to take away from an

indebted rural water association any territory for which the association is entitled to invoke the protection of § 1926(b).").

The PUC Defendants argue that interpreting § 1926(b) to prohibit state decertification of protected property would render it unconstitutional because it commandeers the state water regulatory system. Similar arguments were raised and rejected in *City of Madison* and *Crystal Clear*. The anti-commandeering principle prohibits Congress from "commandeer[ing] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program." *New York v. United States*, 505 U.S. 144, 161 (1992) (citation omitted). But Congress may "encourage a State to regulate in a particular way, or . . . hold out incentives to the States as a method of influencing a State's policy choices" pursuant to its spending power. *Id.* at 166. Section 1926 has been upheld by the Fifth Circuit and others as a valid exercise of Congress's authority under the Spending Clause. *See, e.g.*, *City of Madison*, 816 F.2d at 1061 ("The Tenth Amendment is surely not offended by a limited restriction imposed by the federal government to protect its subsidized loans, particularly when the benefits of those loans accrue to the municipality."); *Glenpool Util. Servs. Auth. v. Creek Cnty. Rural Water Dist. No. 2*, 861 F.2d 1211, 1215-16 (10th Cir. 1988). In *City of Madison*, the Fifth Circuit described § 1926(b) as "ordain[ing] a dual water authority function within a municipal area for a period of time." 816 F.2d at 1061.

The impact of § 1926(b) remains "restricted in time and in scope" because it does not "permanently curtail" the PUC's authority or prevent the PUC from regulating "to assure minimum standards." *Id.*; *see also Crystal Clear*, 316 F. Supp. 3d at 977 (holding that requiring PUC to "consider the question of an association's federally indebted status" is "a simple case of conflict preemption," not commandeering). The undersigned Magistrate Judge concludes that § 1926(b) applies to the actions of the PUC and does not violate the anti-commandeering principle.

**B. SIG and Redbird's Motions to Dismiss**

The Court next addresses the motions to dismiss filed by Defendants SIG and Redbird.

**1. Failure to State a Claim**

SIG and Redbird first move the Court to dismiss Dobbin's complaint under Rule 12(b)(1). They contend that Dobbin has not sufficiently pled that it is entitled to protection under § 1926(b) because it has not plausibly alleged that it has the "physical ability" to provide water to the area at issue. Dobbin responds that it has stated a claim by its allegations that it "made service available" through "nearby facilities and infrastructure" and has the "physical ability to provide water service immediately or within a reasonable period of time." Dkt. 1 ¶ 17. Dobbin contends that the Fifth Circuit has held that a § 1926(b) claim fails if the provider "has no nearby infrastructure." *Green Valley*, 969 F.3d at 477.

Section 1926(b) states that the "service provided or made available" by a federally indebted water utility "shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan." 7 U.S.C. § 1926(b). The Fifth Circuit has addressed the meaning of the statutory text "provided or made available" and interpreted those terms according to their ordinary meaning:

> To "provide" ordinarily means "to make available," "furnish," or "to supply something needed or desired to." And "available" customarily means "[p]resent and ready for use; at hand; accessible" or "capable of being gotten; obtainable." In other words, inherent in the concept of providing service or making service available is the capability of providing service, or, at a minimum, of providing service within a reasonable time.

969 F.3d 460, 476 (5th Cir. 2020) (cleaned up) (quoting *Sequoyah Cnty. Rural Water Dist. No. 7 v. Town of Muldrow*, 191 F.3d 1192, 1203 (10th Cir. 1999)). Consistent with that interpretation, the court adopted the "physical ability" test, which "asks whether the utility has (1) 'adequate

facilities within or adjacent to the area to provide service to the area within a reasonable time after a request for service is made' and (2) the legal right to provide service." *Id.* (quoting *Le-Ax Water Dist. v. City of Athens*, 346 F.3d 701, 706 (6th Cir. 2003)).

Dobbin alleges that it has "nearby facilities/infrastructure maintained by DP (facilities on/within or immediately adjacent to the properties described in the Decertification Petitions)" and the "physical ability to provide water service immediately or within a reasonable period of time to said properties." Dkt. 1 ¶ 17. Whether Dobbin has sufficient infrastructure and adequate facilities to provide water within a reasonable amount of time is a fact issue that cannot be determined at the motion to dismiss stage. Based on Dobbin's allegations, the Court finds that Dobbin has sufficiently pled entitlement to § 1926(b)'s protection. *See Rockett*, 2021 WL 8081920, at *7 (finding that plaintiff adequately pled violation of § 1926(b) where it alleged "nearby facilities and infrastructure" and ability to "provide water service to the areas specified in the Decertification Petitions within a reasonable time after a request for service is made").

### 2.   Claim for Protection under Section 1926(b)

SIG and Redbird next argue that § 1926(b) does not apply to private landowners or the PUC; rather, they contend that it only "prohibits encroachment or curtailment by a municipality of an indebted water supply corporation's area where it provides service." Dkt. 23 at 16; Dkt. 24 at 15-16. SIG and Redbird further argue that § 1926(b) does not preempt § 13.2541 because § 1926(b) does not demonstrate Congress's intent to preempt the PUC's authority regarding state law regulation of CCNs, and § 13.2541 is in harmony with the policy concerns behind § 1926(b).[6] Dobbin responds that there is no case law limiting § 1926(b) to municipalities, and that it

---

[6] SIG and Redbird, which are private entities, do not argue that they are improper defendants under § 1983 or *Ex parte Young*. This issue is non-jurisdictional and therefore subject to waiver and forfeiture. *Green Valley*, 969 F.3d at 474 (citing *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714 (2019)).

"categorically prohibits" curtailment or limitation of the service area. Dkt. 26 at 13. Dobbin further asserts that § 1926(b) preempts § 13.2541 because they are mutually exclusive, making it impossible for the PUC to comply with both. *Id.* at 14.

SIG and Redbird's contention that § 1926(b) does not apply to them is not persuasive. In *Crystal Clear*, the Court considered an argument from a private landowner as well as the PUC. 316 F. Supp. 3d at 973. The Court found that § 1926(b) applied to both the PUC and the landowner to protect the service area, whether or not a municipality has moved to incorporate the property. *Id.* at 973-74. SIG and Redbird's actions can be considered a curtailment or limitation prohibited by § 1926(b) even though they are private entities. Accordingly, the Court must consider whether § 1926(b) is inconsistent with Texas Water Code § 13.2541.

There are three types of preemption: express, field, and conflict. Only conflict preemption is relevant here. *Aldridge v. Miss. Dep't of Corr.*, 990 F.3d 868, 875 (5th Cir. 2021). Under the doctrine of conflict preemption, state law is preempted where (1) compliance with both state and federal law is impossible, or (2) state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Id.* at 875. "What is a sufficient obstacle [to trigger conflict preemption] is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects[.]" *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) (citing *Savage v. Jones*, 225 U.S. 501, 533 (1912)). The party asserting federal preemption bears the burden of persuasion. *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 802 (5th Cir. 2011).

Dobbin argues that compliance with both § 1926(b) and § 13.2541(d) is impossible because the standards for decertification differ and are mutually exclusive. The Court agrees.

In *Crystal Clear*, 316 F. Supp. 3d at 975, the Court held that § 13.2541(d) was preempted because there was a "direct conflict" between federal and state law. The Court reasoned that the law "prevents the PUC from considering a certificate of convenience and necessity holder's federally indebted status," and therefore "the PUC is also precluded from applying § 1926(b)'s protections." *Id.* The Court further reasoned that § 13.2541(d) was an obstacle to accomplishing the purpose of § 1926(b) because it prevented § 1926(b) from offering protection "in the very proceeding where this protection applies." *Id.* at 976.[7]

Under the federal standard (the physical ability test), an entity that has adequate facilities to provide service within a reasonable time and the legal right to provide service is entitled to § 1926(b) protections. Section 13.2541 prohibits the PUC from denying decertification petitions "based on the fact that the certificate holder is a borrower under a federal loan program." TEX. WATER CODE § 13.2541(d). When a property is eligible for decertification under § 13.2541(b) because it "is not receiving water or sewer service," the certificate holder will not be afforded § 1926(b)'s protections even if it is able to provide water service within a reasonable amount of time. These provisions are in conflict because, in some circumstances, it is "physically impossible" for the PUC to comply with both § 1926(b) and § 13.2541(d) at the same time. *Crystal Clear*, 316 F. Supp. 3d at 975.

### 3. Noerr-Pennington Doctrine

SIG and Redbird argue that Dobbin's claims should be dismissed pursuant to Rule 12(b)(1) because Dobbin's claims are predicated on SIG and Redbird's petitions to the government, an exercise of their First Amendment rights protected by the *Noerr-Pennington* doctrine. Dobbin

---

[7] The undersigned observes that the Court concluded that § 13.2541(d) was not preempted in *Green Valley Special Util. Dist. v. Walker*, 351 F. Supp. 3d 992, 1001 (W.D. Tex. 2018), but in its opinion in *Green Valley*, the Fifth Circuit vacated that holding without addressing the preemption argument. 969 F.3d at 469.

responds that the *Noerr-Pennington* doctrine is inapplicable because there is no right to petition the government based on a preempted and therefore void statute. Dobbin further argues that the *Noerr-Pennington* doctrine does not apply to suits for declaratory judgments.

Under the *Noerr-Pennington* doctrine, parties that petition the government for action favorable to them cannot be prosecuted under antitrust laws even though their petitions are motivated by anticompetitive intent. *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965); *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988). Although the *Noerr-Pennington* doctrine arose in the antitrust context, some circuit courts of appeal, including the Fifth Circuit, have expanded it to find that the First Amendment protects petitioning the government from claims brought under federal and state laws, including § 1983 and common-law tortious interference with contractual relations. *Video Int'l Prod.*, 858 F.2d at 1084. This is because: "There is simply no reason that a common-law tort doctrine can any more permissibly abridge or chill the constitutional right of petition than can a statutory claim such as antitrust." *Id.*

*Noerr-Pennington*, however, "provides only a defense to liability, not an immunity from suit." *Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287, 295 (5th Cir. 2000). A defendant's successful assertion of the doctrine thus does not strip the court of jurisdiction. Accordingly, the *Noerr-Pennington* doctrine is not jurisdictional, and SIG and Redbird incorrectly seek dismissal under Rule 12(b)(1). Because Rule 12(b)(1) does not apply, the Court analyzes SIG and Redbird's arguments under Rule 12(b)(6).

While there is a dearth of case law addressing applicability of the *Noerr-Pennington* doctrine in this context, several recent opinions have considered the topic. *See Liberty Utilities (Tall Timbers Sewer) Corp. v. City of Tyler*, 1:19-CV-857-LY, Dkt. 54 at 14 (W.D. Tex. Aug. 30, 2019)

("*Liberty Utilities*") (stating that "there is little law directly on point"), *R. & R. adopted*, Dkt. 59 (W.D. Tex. June 21, 2021); *Rockett*, 2021 WL 8081920, at *8; *Crystal Clear*, 316 F. Supp. 3d at 978. SIG and Redbird correctly submit that courts have not established a bar against applying the *Noerr-Pennington* doctrine to claims for declaratory or injunctive relief. *See Scioto Cnty. Reg'l Water Dist. No. 1 v. Scioto Water, Inc.*, 916 F. Supp. 692, 700 (S.D. Ohio 1995) (holding that defendant was entitled to summary judgment on plaintiff's claim seeking declaratory and injunctive relief for its violation of § 1926(b) by "petitioning administrative agencies and the courts for relief").

This Court, however, has declined to apply the doctrine in similar cases at the motion to dismiss stage. For example, in *Liberty Utilities*, a wastewater utility sued the city of Tyler to challenge a state law for which the city had lobbied. The city moved to dismiss under *Noerr-Pennington*. After considering the purpose of the doctrine, the Court concluded that: "A suit seeking to declare a law unconstitutional does not have the same chilling effect on the right to petition the government as a suit seeking to hold the [defendant] financially liable for its actions." *Liberty Utilities*, Dkt. 54 at 14. In *Rockett*, 2021 WL 8081920, at *9, the Court relied on *Liberty Utilities* to defer the *Noerr-Pennington* issue until after the plaintiff established that it was entitled to relief. *See also Crystal Clear*, 316 F. Supp. 3d at 978 (deferring consideration of *Noerr-Pennington* doctrine until court considered entitlement to and scope of injunction). The Court therefore recommends that consideration of *Noerr-Pennington* be deferred until Dobbin establishes that it is entitled to relief.

### 4. Judicial Notice

SIG and Redbird ask the Court to take judicial notice of the publicly filed discovery responses and findings from the ongoing PUC proceeding to show that Dobbin lacks the capacity to serve their properties. Dobbin responds that the documents cannot be cited as dispositive facts in this case, but does not object to the Court taking judicial notice of the proceeding.

Courts may take judicial notice of matters of public record when deciding a motion to dismiss. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 737 (5th Cir. 2019). This includes court proceedings and rulings, decisions of governmental agencies, arbitration records, and published reports of administrative agencies.[8] A court may take judicial notice only of those matters contained in public records that are "not subject to reasonable dispute." FED. R. EVID. 201(b). Furthermore, a court may take judicial notice of documents filed in other proceedings "for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents." *Lovelace*, 78 F.3d at 1018; *see also Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 408 n.7 (5th Cir. 2004) ("Although we cannot take judicial notice of findings of fact of other courts, the fact that a judicial action was taken is indisputable and is therefore amenable to judicial notice."); *Warden v. Barnett*, 252 F.3d 1356 n.1 (5th Cir. 2001) (taking judicial notice of state court petition "not offered for the truth of the matters alleged therein").

SIG and Redbird seek to use the discovery responses and findings to show that Dobbin lacks the capacity to serve their properties, a central and disputed issue in this case. The Court declines to take judicial notice of the documents insofar as SIG and Redbird seek to use them for the truth of the factual assertions they contain. The Court will, however, take judicial notice of the existence of the proceedings.

---

[8] *See, e.g., Caha v. United States*, 152 U.S. 211, 222 (1894) (taking judicial notice of rules and regulations prescribed by interior department); *Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev., Inc.*, 972 F.3d 684, 688 n.9 (5th Cir. 2020) (taking judicial notice of arbitration order); *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020) (taking judicial notice of court judgments and opinions); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (taking judicial notice of publicly available documents and transcripts produced by Food and Drug Administration); *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996) (taking judicial notice of filings with Securities and Exchange Commission).

### 5. Res Judicata

Redbird argues that the PUC's staff recommendation and ALJ's proposed findings of fact are entitled to res judicata. Dobbin responds that the proposed order and finding of facts are in conflict with federal law, and that it did not have an adequate opportunity to litigate the issues underlying the order because the PUC does not consider the physical ability standard.

When the requirements of res judicata otherwise are met under Texas law, a determination by a Texas administrative agency acting in a judicial capacity is afforded the effect of res judicata on a court. *Igal v. Brightstar Info. Tech. Grp., Inc.*, 250 S.W.3d 78, 86 (Tex. 2008). Finality is an essential component of both the concepts of res judicata and collateral estoppel. *J.R. Clearwater Inc. v. Ashland Chem. Co.*, 93 F.3d 176, 179 (5th Cir. 1996) (citing *Avondale Shipyards v. Insured Lloyd's*, 786 F.2d 1265, 1269 (5th Cir. 1986)); *see also Mower v. Boyer*, 811 S.W.2d 560, 562 (Tex. 1991) (stating that both collateral estoppel and res judicata require a final judgment). The Texas Supreme Court has defined a final agency order as one (1) that is definitive, (2) promulgated in a formal manner, (3) with which the agency expects compliance, and (4) that imposes an obligation, denies a right, or fixes some legal relationship as a consummation of the administrative process. *Texas-New Mexico Power Co. v. Texas Indus. Energy Consumers*, 806 S.W.2d 230, 232 (Tex. 1991).

In this case, there is no final order because, as Redbird states, "the parties await issuance of a final order by the PUC." Dkt. 24 at 20. The Court therefore takes judicial notice of the existence of the proposed order and findings of fact, but does not find that they are entitled to res judicata effect.

### 6. Impermissible Offensive Use of Section 1926(b)

Finally, SIG and Redbird argue that Dobbin fails to state a claim because § 1926(b) cannot be used offensively to sue a property owner that is not receiving water service. They rely solely on

*Le-Ax Water Dist. v. City of Athens, Ohio*, 346 F.3d 701, 704 (6th Cir. 2003), in which a water provider attempted to assert § 1926(b) protections over an area that was outside of its boundary. The Sixth Circuit reasoned that a "water district cannot use § 1926(b) as a sword to force new customers who are outside that geographic area to receive water service through the rural water district." *Id.* at 708.

The area at issue in this case, in contrast, undisputedly is in Dobbin's CCN, and this argument has been rejected by the Court in analogous circumstances. *Rockett*, 2021 WL 081920, at *10 (holding *Le-Ax* inapplicable where "area at issue . . . was undisputedly within [plaintiff's] CCN").

## IV.    Recommendations

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Defendants Peter Lake, Williams McAdams, and Thomas Gleeson's Motion to Dismiss (Dkt. 20). The Court recommends that the motion be granted as to the § 1983 claim and denied in all other respects.

The Court further **RECOMMENDS** that the District Court **DENY** Defendant SIG Magnolia LP's Motion to Dismiss (Dkt. 23) and Defendant Redbird Development, LLC's Motion to Dismiss (Dkt. 24).

## V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and,

except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on July 13, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE